IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PHYLLIS KILLMEYER, ET AL.
          Plaintiff,                )
                                    )
     v.                             )     Civil Action No. 96-1723
                                    )
OGLEBAY NORTON COMPANY, ET AL.,     )
          Defendants.               )

## MEMORANDUM AND ORDER

Gary L. Lancaster,
Chief Judge.                                    September 20, 2011

This is an action for wrongful death and loss of
consortium. Plaintiff, Phyllis Killmeyer, alleges on behalf of
herself, and as executrix of the estate of her husband, decedent
Harry Killmeyer, that products manufactured, supplied, and/or
distributed by defendants Beazer East, Inc. ("Beazer") and Ferro
Engineering, a Division of ON Marine Services Company ("Ferro"),
among others, caused the death of decedent. She seeks in excess
of $25,000 in damages on behalf of herself and her husband's
estate.

Both Beazer and Ferro have moved for summary judgment
pursuant to Fed. R. Civ. P. 56(c) [Doc Nos. 35, 39].[1]     Ferro
asserts that plaintiff cannot proceed against it because the

---

[1]  Ferro's motion is styled as a Motion to Dismiss and/or for Summary
     Judgment. As the court has considered documentary evidence beyond the
     pleadings, it will be treated as a motion for summary judgment.

Court of Common Pleas of Allegheny County dismissed it from this action over fifteen years ago. Ferro further asserts that plaintiff cannot establish that her husband was exposed to its products, nor can she establish that they were the proximate cause of his injuries. Both Beazer and Ferro argue that plaintiff is not the real party in interest and that, at any rate, plaintiff is judicially estopped from pursuing this action. Jeffrey Sikirica, plaintiff's chapter 7 trustee, has moved to substitute himself for plaintiff in her own right as the real party in interest [Doc No. 67].

For the reasons that follow, Ferro's motion for summary judgment will be granted and Ferro will be dismissed from this action. Beazer's motion for summary judgment will be denied. The trustee's motion to substitute will be granted. Plaintiff will proceed only in her capacity as executrix. All motions to strike filed by the various parties will be denied.

I. BACKGROUND

Except where indicated, the following material facts are undisputed. Disputed facts have been analyzed in the light most favorable to plaintiff as the non-moving party.

A. Court of Common Pleas Action and Removal

Plaintiff Phyllis Killmeyer is the widow of Harry Killmeyer, who died of lung cancer in 1995. On October 19,

2

1995, plaintiff, in her own right and as executrix of her husband's estate, brought suit in the Court of Common Pleas of Allegheny County against fifty-two defendants. The suit, based on theories of wrongful death (on behalf of both parties) and loss of consortium (on behalf of plaintiff) and a survival action (on behalf of her husband's estate), alleged that his death was caused by asbestos-related products manufactured, supplied, and/or distributed by the defendants. Beazer and Ferro were among those defendants. On January 16, 1996, plaintiff filed an Amended Complaint, adding sixteen additional defendants. On March 16, 1996, following a settlement with certain defendants, the Court of Common Pleas entered an order allocating those settlement proceeds and all "future settlement or verdict recoveries or shortfalls" entirely to plaintiff's wrongful death and loss of consortium claims. The survival claim owned by her husband's estate was allocated 0% of future recovery. On March 18, 1996, the Court of Common Pleas severed the defendants who had been added in the Amended Complaint.

On April 11, 1996, the Court of Common Pleas issued an order (the "1996 Order") reading as follows:

And now, to-wit, this 11th day of April, 1996, The case settled except for the following Defendants A.C.&S., Westinghouse, Bigelow-Liptak, & Beazer East, and all Defendants named in the second complaint in January 1996 will be continued in September of 1996.

Beyond this order, no other proof of a settlement or order of dismissal has been produced by Ferro.

On September 18, 1996, defendant Duquesne Light Company removed the case to the United States District Court for the Western District of Pennsylvania. The docket reflects that on November 22, 1996, the case was transferred to the Eastern District of Pennsylvania as part of a multi-district litigation (the "MDL Proceeding"). For reasons which are unclear from the record before this court, the case then lay dormant until March 22, 2007.

## B. Probate of Harry Killmeyer's Estate and Allocation of Proceeds

Meanwhile, plaintiff was also administering her late husband's estate in the Court of Common Pleas of Allegheny County, Orphans' Division ("Orphans' Court"). On April 10, 1996, she filed a Family Agreement (the "Family Agreement") with that court, which stated that:

The Estate was raised for the sole purpose of conducting litigation which has now concluded. All proceeds from said litigation have been allocated to the Wrongful Death Action and Loss of Consortium and are distributable to Phyllis Killmeyer, surviving spouse.

The Family Agreement also stated that plaintiff wished to complete her final distribution without a formal accounting. On

4

January 28, 1997,[2] the Register of Wills of Allegheny County received a Status Report Under Rule 6.12 in which plaintiff's probate attorney stated that the administration of the estate was complete. However, the Orphans' Court did not enter an order confirming the estate has closed.

## C. Phyllis Killmeyer's Bankruptcy Case

On October 1, 2009, plaintiff filed a chapter 7 petition in United States Bankruptcy Court for the Western District of Pennsylvania. On the Schedule of Assets and Liabilities she filed with the court, she responded to question 20, "Contingent and noncontingent interests in estate of a decedent..." with the following: "Through the estate of Harry Killmeyer, Debtor's late husband, Debtor has an interest in three remaining settlement payments arising from asbestos silicas [sic] case, described in greater detail . . . at #21."

At question 21, "Other contingent and unliquidated claims of every nature…" plaintiff disclosed:

Debtor has an interest in Killmeyer et al. v. Garlock Inc., et al., Case No. GD-95-016874 in the Allegheny County Court of Common Pleas. This is an asbestos silicas [sic] case arising from Debtor's late husband's claim. Debtor is represented by Christopher Smith, Esquire, Goldberg Persky and White, P.C. . . . The case has been settled and discontinued. Mr. Smith states that there are only three defendant trusts remaining with outstanding settlement issues. He cannot state with certainty the amount to be received from the resolution of these issues but he

---

[2]     Although the Status Report was dated 1/27/96, the stamp of receipt is dated "1997 Jan 28."

estimates that each payment will be similar to those that were received in the past on this case: approximately $1,000.00 to $2,000.000 each.

The current value of the interest was listed as "Unknown."

Despite plaintiff's representation to the bankruptcy court that the case was "settled and discontinued," plaintiff's counsel was conducting the MDL Proceeding. As early as June, 2008, over a year before the bankruptcy petition date, plaintiff sent settlement demands to both Beazer and Ferro. On September 21, 2009, the Hon. Eduardo C. Robreno of the United States District Court for the Eastern District of Pennsylvania scheduled a status and settlement conference in the MDL Proceeding. On October 22, 2009, plaintiff, through counsel, informed Beazer, Ferro, and a third defendant that they were "remaining defendants" in the case.

On December 11, 2009, Ferro, through counsel, sent a letter to a case administrator in the MDL Proceeding arguing that it was no longer a party to this matter (the "December 2009 Letter"). Plaintiff was copied but did not respond. Ferro did not take further action until October 2010, when Ferro's counsel, in court to represent other clients during summary judgment arguments, restated Ferro's position that it was no longer a party.

According to plaintiff, in the course of preparing her Schedule of Assets and Liabilities, her bankruptcy counsel

6

contacted the law firm representing her in the MDL Proceeding to inquire about its status. A legal assistant at the firm, apparently relying on the firm's internal computer database, informed bankruptcy counsel that the action was "settled and discontinued." Bankruptcy counsel independently reached the same conclusion based on the docket for the Allegheny County Court of Common Pleas. Defendants dispute whether bankruptcy counsel's reading of the Court of Common Pleas's docket was reasonable, but otherwise deny knowledge or information about this series of events.

On January 8, 2010, plaintiff received an Order of Discharge from bankruptcy court, relieving her of debts totaling $89,521.23.

On December 7, 2010, the MDL remanded plaintiff's wrongful death case to this court. Following a Status Conference, the parties filed the motions at issue.

In addition to the motions already discussed, all parties have filed a number of motions to strike. Specifically: plaintiff has moved to strike portions of Ferro's Motion to Dismiss and/or Motion for Summary Judgment and its Concise Statement of Material Facts [Doc. No. 43], on the grounds that the offending portions are immaterial given the scope of the court's March 14, 2011 Final Scheduling Order; Beazer and Ferro have both moved to strike every motion filed by plaintiff

7

beginning October 1, 2009 [Doc. Nos. 48, 49, 59, 64, 66, 170],
on the grounds that she lacked standing; and both defendants
have moved to strike all filings made by the trustee other than
his Motion to Substitute [Doc. Nos. 60, 65, 164], on the grounds
that he cannot appear as counsel for plaintiff, who they allege
has no standing, and cannot appear as trustee, because he is not
yet a party.

The motions are fully briefed and ripe for disposition. For
the reasons that follow, Ferro's motion for summary judgment
will be granted, and Beazer's motion for summary judgment will
be denied. All motions to strike will be denied.

## II. STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions,
answers to interrogatories, and admissions on file, together
with the affidavits, if any, show that there is no genuine issue
as to any material fact and that the moving party is entitled to
a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact
is "material" if it might affect the outcome of the case under
the governing substantive law. Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 255 (1986). "Factual disputes that are irrelevant
or unnecessary will not be counted." Id. A dispute over a
material fact must be "genuine," that is, the evidence must be

8

such "that a reasonable jury could return a verdict in favor of the non-moving party." Id.

When a properly supported motion for summary judgment is made, an adverse party may not rest upon the mere allegations or denials of his pleadings, but the adverse party's response, by affidavits or as otherwise provided in the rule, must set forth specific facts showing that there is a genuine issue for trial. If the evidence of the nonmoving party is "merely colorable," or is "not significantly probative," summary judgment may be granted. Id. at 249-50. Similarly, a nonmoving party may not successfully oppose a summary judgment motion by simply replacing "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." Lujan v. National Wildlife Federation, 497 U.S. 871, 888 (1990). Rather, the nonmoving party must offer specific facts found in the record contradicting the facts averred by the movant which indicate that there is a genuine issue for trial. Id. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered.

With these concepts in mind, the court turns to the merits of defendant's motion.

III.    DISCUSSION

    A.    Effect of the 1996 Court of Common Pleas Order

    Ferro seeks dismissal from this action, on the basis that
the 1996 state court Order "clearly indicates" that Ferro had
been dismissed from the lawsuit prior to removal.   Plaintiff
does not dispute that the 1996 Order, on its face, dismisses
Ferro.   However, she argues that the omission of Ferro from the
order was a "mistake" on the part of the Court of Common Pleas,
a   mistake   attributable   to   the   complexity   of   this   case.
Moreover, plaintiff notes that Ferro has not demonstrated how
its claims were resolved, nor presented an order of court
confirming the resolution.   We see no reason not to afford the
1996 Order the same respect a final order issued by a federal
court would receive, and will, therefore, dismiss Ferro from
this action based on the 1996 Order.

    State court judgments issued prior to removal to federal
court receive full, binding effect unless they are actively
dissolved or modified by the district court.   28 U.S.C. § 1450.
The Supreme Court has noted that respecting state court orders
in this fashion promotes judicial economy and ensures that the
rights of the parties do not lapse after removal.   Granny Goose
Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No.
70, 415 U.S. 423, 435-36 (1974).   "After removal, the federal
court 'takes the case up where the State court left it off.'"

Id. at 436 (quoting Duncan v. Gegan, 101 U.S. 810, 812 (1880)). In effect, the prior state court orders are "transformed" into orders of the federal court to which the case was removed. In re Diet Drugs Prods. Liab. Litig., 282 F.3d 220, 231-32 (3d. Cir. 2002) (citing Nissho-Iwai Am. Corp. v. Kline, 845 F.2d 1300, 1304 (5th Cir. 1988)).

Settlement Orders, once entered, must be interpreted "consistently with fundamental precepts of contract construction." See, e.g., Washington Hosp. v. White, 889 F.2d 1294, 1300 (3d Cir. 1989) (interpreting a court-ordered stipulation of dismissal). As such, unless the order is ambiguous, extrinsic evidence may not be used to interpret it. Washington Hosp., 889 F.2d at 1303.

Plaintiff has provided no reason to revisit the effect of the 1996 Order, which has now been part of the procedural history of this litigation for fifteen years. She does not allege that it is ambiguous on its face. Even if the contract were ambiguous, she has failed to produce any evidence that the 1996 Order should not have dismissed Ferro. Her unsupported speculation that the 1996 Order was mistaken is not sufficient. Nor does she give any reason why Ferro should be under any obligation to prove the validity of the 1996 Order.

Moreover, even assuming that the 1996 Order contains clear error, plaintiff cannot demonstrate that maintaining its effect

11

would create an injustice. If she truly believed the 1996 Order was in error, she had ample opportunity to correct it after the case was removed to federal court in September 1996.[3] Fed. R. Civ. P. 60(b)(1) affords litigants relief from "mistake, inadvertence, surprise, or excusable neglect" in a judgment or order, provided the party moves within a reasonable time, but no more than one year after the judgment or order is entered.[4] Plaintiff did not move within that time period to correct the alleged mistake made by the state court. As a result, plaintiff is not entitled to relief from the mistake under Fed. R. Civ. P. 60(b)(1).[5]

Finally, there is no evidence that Ferro waived its argument by appearing in this case after the issuance of the 1996 Order. Consistent with the 1996 Order, the only action Ferro took during the MDL Proceeding was to compose the December 2009 Letter expressing its belief that it was no longer a party

---

[3]   Although Killmeyer has not sought to formally correct the alleged error pursuant to Fed. R. Civ. P. 60, the court can address the issue sua sponte.

[4]   The alleged error constitutes a mistake subject to Fed. R. Civ. P. 60(b), not a "clerical mistake" subject to Fed. R. Civ. P. 60(a).  "[A] clerical error 'must not be one of judgment or even of misidentification, but merely of recitation, of the sort that a clerk or amanuensis might commit, mechanical in nature.'"  United States v. Guevremont, 829 F.2d 423, 426 (3d Cir. 1987) (quoting Dura-Wood Treating Co. v. Century Forest Indus., 694 F.2d 112, 114 (5th Cir. 1982). Like the correction at issue in Guevremont, this alleged error "substantially revamps the order" and is therefore more than clerical.

[5]   Ferro also argues that Killmeyer is barred from objecting to the 1996 Order by laches.  Laches is an equitable doctrine, "most commonly raised as an affirmative defense to a lawsuit."  In re Diet Drugs Prod. Liab. Litig., 375 Fed. Appx. 269, 272 (3d Cir. 2010).  Because we find that Killmeyer cannot demonstrate that the 1996 Order was in error, we need not address whether the doctrine of laches applies as well.

12

to the action. Upon remand from the MDL Proceeding to this court, Ferro entered a Special Limited Appearance, reserving its rights to challenge jurisdiction.[6]

Thus, the court will grant Ferro's motion for summary judgment on the grounds that Ferro has already been dismissed from this action by prior order in this case. Plaintiff's Motion to Strike Portions of Defendant Ferro Engineering's Motion for Summary Judgment [Doc. No. 43] will be denied as moot.

## B.    Real Party in Interest and Judicial Estoppel

Both Beazer and Ferro argue that plaintiff is judicially estopped from pursuing her wrongful death and loss of consortium claims and that the chapter 7 trustee, not plaintiff, is the real party in interest.[7] We find that the trustee is the real

---

[6]    Ferro, in its brief, claims that this court lacks subject matter jurisdiction. The court does not believe that the 1996 Order deprives it of subject matter jurisdiction over the litigants, as this case is related to Killmeyer's reopened bankruptcy case. 28 U.S.C. § 1334(b). The cause of action belongs to the bankruptcy estate, see infra. This action also clearly meets the court of appeals' longstanding test for jurisdiction, that "the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy." PACOR, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984); see Crossley v. Lieberman, 90 B.R. 682, 691 (Bankr. E.D. Pa. 1988) ("[P]laintiff's cause of action in this matter, arising as it did before the filing, is clearly a part of the estate and therefore a related matter. . . .")

[7]    Both defendants argue that plaintiff lacks standing to pursue this action. The use of standing terminology is common in cases analyzing this issue. See Schafer v. Decision One Mortgage, No. 08-5653, 2009 U.S. Dist. LEXIS 56639 at *14 n.4 (E.D. Pa. July 1, 2009). However, standing is an inquiry into whether the plaintiff suffered an injury traceable to the defendant's conduct. Feist v. Consolidated Freightways Corp., 100 F. Supp. 2d 273, 275 (E.D. Pa. 1999). That is not at issue here. At issue is which party, plaintiff or the trustee, possesses the right being enforced. Id.

13

party in interest and we decline to estop him from pursuing those claims on behalf of plaintiff's bankruptcy estate.

## 1. Real Party in Interest

The status of the plaintiff as the real party in interest is the threshold issue in this case. The Bankruptcy Code provides that: "The trustee in a case under [the Code] is the representative of the estate." 11 U.S.C. § 323(a). Causes of action belonging to the debtor at the time of petition belong to the bankruptcy estate. Saellam v. Norfolk Southern Corp., No. 06-123, 2007 WL 1653737 at *3 (W.D. Pa. June 6, 2007). Thus, only the chapter 7 trustee is the real party in interest to pursue prepetition causes of action. Id. The debtor may pursue the claims if the trustee abandons them pursuant to 11 U.S.C. § 554. However, for abandonment to occur, the claim must either be formally abandoned by the trustee after "notice and a hearing," § 554 (a)-(b), or it must have been properly scheduled under section 521(a)(1) and not administered, § 554(c).

Plaintiff's interest in this lawsuit, which was actively pending when plaintiff filed her chapter 7 petition on October 1, 2009, is clearly property of the estate. As of that date, the chapter 7 trustee became the real party in interest and the only person authorized to pursue it. The trustee has not abandoned the cause of action, formally or informally. Because plaintiff failed to list the asset in her schedules as required

14

by statute, the trustee's failure to administer the asset did not constitute abandonment under 11 U.S.C. section 554(c). In fact, upon being informed of the existence of the suit, the trustee promptly moved to reopen the bankruptcy.

Beazer, in its Response in Opposition to Motion for Substitution of Parties [Doc. No. 186], argues that plaintiff should be dismissed from this action in her capacity as executrix of her husband's estate. Beazer argues that the probate estate was closed in January of 1997 when she filed a status report pursuant to Pennsylvania Supreme Court Orphans' Court Rule 6.12 avowing that the administration of the estate was complete. Therefore, Beazer argues, plaintiff is no longer the executrix of the estate. It further argues that, because plaintiff is the sole beneficiary of the probate estate, any distributions therefrom are now property of her bankruptcy estate and thus can only be pursued by the trustee.

Plaintiff disputes that the probate estate was ever closed. At this juncture, the state of the record is unclear, and we cannot determine whether the estate was closed before plaintiff commenced this action. Construing this lack of clarity in favor of plaintiff, as we must, Beazer's request to dismiss plaintiff is denied.

## 2. Trustee's Motion for Substitution of Parties

The trustee filed his Motion for Substitution of Parties [Doc. No. 67] on August 15, 2011, four months and a day after the Bankruptcy Court reopened plaintiff's bankruptcy case. Pursuant to Fed. R. Civ. P. 25, he seeks to be substituted as plaintiff only for plaintiff in her own right. Ferro did not oppose the motion; Beazer filed a partial opposition and argues that plaintiff should be dismissed from the action in her role as executrix of her husband's estate.

Fed. R. Civ. P. 25(c) allows the court, on motion, to substitute a trustee for a chapter 7 debtor where the trustee is the proper party in interest. Hutchinson v. Del. Sav. Bank FSB, 410 F. Supp. 2d 374, 382 (D.N.J. 2006).

The court's consideration of the motion is further governed by Fed. R. Civ. P. 17(a)(3), which provides:

> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

What constitutes reasonable time "is a matter of judicial discretion and will depend on the facts of each case." Schafer v. Decision One Mortgage Corp., No. 08-5653, 2009 U.S. Dist. LEXIS 56639 at *6 (E.D. Pa. June 30, 2009) (citations omitted).

16

The scope of Rule 17(a)(3) is not unlimited; its application is "intended to insure against forfeiture and injustice." Fed. R. Civ. P. 17, 1966 Amendment, advisory committee's note. Substitution is only available where the determination of the proper party is "difficult" or the plaintiff's misidentification of the party was the result of "an understandable mistake." Id.; Nelson v. County of Allegheny, 60 F.3d 1010, 1015 n.8 (3d Cir. 1995). In some instances, courts have used the "understandable mistake" limitation to bar substitution by a trustee where the plaintiff did not disclose his or her claims in bankruptcy in bad faith. See, e.g., Feist v. Consolidated Freightways Corp., 100 F. Supp. 2d 273, 280 (E.D. Pa. 1999) (denying motion to substitute due to plaintiff's bad faith in filing case in his own name). However, courts using Fed. R. Civ. P. 17(a) to fashion equitable relief, as in cases of judicial estoppel, also may consider less drastic alternatives than dismissal to prevent injustice, including injustice to creditors in bankruptcy. Weiburg v. GTE Southwest, Inc., 272 F.3d 302, 309 (5th Cir. 2001).

Here, the trustee has moved to substitute within a reasonable time from defendants' initial objection to plaintiff's status in this lawsuit. The summary judgment motions filed by each defendant on April 13, 2011 constituted the first formal objections to plaintiff's standing.

17

Informally, plaintiff has averred that the trustee was first notified of this lawsuit in March 2011, which defendants have not disputed. During the interim period, the trustee moved to have special counsel appointed in Bankruptcy Court; the hearing on his motion was continued and was still pending at the time this decision was issued. Therefore, the four month period between defendants' initial formal objection and the trustee's motion to substitute is not unreasonable. In addition, the failure to move to substitute was due to the trustee's understandable mistake that this action did not exist, a mistake attributable to debtor's nondisclosure.

The trustee's motion to substitute for plaintiff in her own right as real party in interest will be granted pursuant to Fed. R. Civ. P. 17(a) and 25. Under the terms of Fed. R. Civ. P. 17(a), the action may now proceed as if it had been originally commenced by the trustee. Therefore, all motions and pleadings filed by plaintiff since the filing of her bankruptcy petition are attributed to the trustee and will not be dismissed for lack of standing. See Rousseau v. Diemer, 24 F. Supp. 2d 137 (D. Mass. 1998) (finding no prejudice to defendants resulting from substitution because "nothing will change as a result of substituting the trustee as plaintiff in this action, except that this action will now be maintained for the benefit of Plaintiff's creditors and not for the Plaintiff himself.").

18

Because the trustee has been substituted as real party in interest, his motions to join plaintiff's pleadings are denied as moot. Beazer's Motions to Strike, all of which are based on plaintiff's lack of standing, will, therefore, be denied.

### 3. Application of Judicial Estoppel

Having substituted the trustee for plaintiff, the court must now consider whether plaintiff's failure to disclose this pending litigation to the bankruptcy court should estop the trustee from proceeding. Given the circumstances, we will not estop the trustee.

The equitable doctrine of judicial estoppel is based on the principle that "absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory." Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 358 (3d Cir. 1996) (quoting 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4477 (1981)). In a trio of cases, the court of appeals has applied judicial estoppel where a debtor in bankruptcy failed to disclose the existence of pending or potential claims to the bankruptcy court. See Krystal Cadillac-Oldsmobile-GMC Truck, Inc. v. Gen. Motors Corp., 337 F.3d 314 (3d Cir. 2003); Ryan, 81 F.3d 355; Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414 (3d Cir. 1998).

In Ryan, the court of appeals noted that the Bankruptcy Code requires debtors to file both a schedule of assets and liabilities, and a statement of the debtor's financial affairs with the court. Ryan, 81 F.3d at 362. 11 U.S.C. § 521(a)(1). Products liability actions, like all claims and causes of action, are "contingent assets" among those required to be listed. Ryan, 81 F.3d at 357. Because the courts and creditors rely on these schedules in devising a plan of reorganization and approving a discharge of debtors' debt, such disclosure is "crucial to the effective functioning of the federal bankruptcy system." Id. at 362.

A clear standard has emerged from these cases. For a debtor to be judicially estopped from pursuing an undisclosed claim: (1) the debtor must have taken positions that are irreconcilably inconsistent with each other; (2) she must have done so in bad faith; and (3) the estoppel must be tailored to address the specific harm, such that a lesser sanction would not adequately remedy the damage done by the debtor's dishonesty. Krystal Cadillac-Oldsmobile-GMC Truck, 337 F.3d at 319-20. A rebuttable presumption of bad faith exists when the pleadings demonstrate knowledge of the claim and a motive to conceal it. Id. at 321. That a debtor has different lawyers handling her claim is not necessarily sufficient to rebut the presumption of bad faith. See, e.g., Eastman v. Union Pac. R.R., 493 F.3d

20

1151, 1159 (10th Cir. 2007) ("[Debtor's] assertion that he
simply did not know better and his attorney 'blew it' is
insufficient to withstand application of the doctrine.").

The court of appeals has not addressed whether judicial
estoppel should be applied to a trustee in bankruptcy when the
debtor fails to properly schedule a claim. However, several
other courts of appeal, as well as district courts within the
Western District of Pennsylvania, have permitted the trustee to
pursue an undisclosed claim. See, e.g., Reed v. City of
Arlington, -- F.3d ----, 2011 WL 3606100 (5th Cir. Aug. 11,
2011) (upholding district court decision that applying judicial
estoppel to trustee would be counter to the Bankruptcy Code and
inequitable); Kane v. National Union Fire Insurance Co., 535
F.3d 380 (5th Cir. 2008) (declining to estop chapter 7 trustee
from pursuing undisclosed personal injury claim); Parker v.
Wendy's Int'l, Inc., 365 F.3d 1268 (11th Cir. 2004) (allowing
trustee to pursue undisclosed claims as real party in interest);
Saellam, 2007 WL 1653737 at *4 (allowing chapter 7 trustee
opportunity to move to substitute as real party in interest);
Stramiello-Yednak v. Perl, No. 05-517, 2006 WL 1158123 at *1
(W.D. Pa. Apr. 28, 2006) (granting chapter 7 trustee's motion to
intervene). See also Eastman, 493 F.3d at 1155 n.3 (stating
that application of judicial estoppel was likely inappropriate
against trustee, but trustee had abandoned claims); Biesek v.

Soo Line Railroad Co., 440 F.3d 410 (7th Cir. 2006) ("Judicial
estoppel is an equitable doctrine, and using it to land another
blow on the victims of bankruptcy fraud is not an equitable
application.").

We agree with the reasoning of these cases. The trustee
and plaintiff's creditors should not be denied the benefit of a
cause of action, and potential recovery, due to plaintiff's
failure to disclose. Therefore, plaintiff's conduct will not be
used to estop the trustee, who has "made no false or
inconsistent statement under oath in a prior proceeding and is
not tainted or burdened by the debtor's misconduct." Parker,
365 F.3d at 1273.

It is possible that the trustee may recover an amount above
the $89.521.23 that is owed to plaintiff's creditors, in
addition to costs and fees incurred. Should he do so, the court
may consider at that time whether plaintiff's actions in the
bankruptcy proceeding judicially estop her from receiving the
excess proceeds. At this time, however, such consideration is
premature. See Parker, 365 F.3d at 1273 n.4 (postponing
application of judicial estoppel to debtor until trustee
obtained judgment); Stramiello-Yednak, 2006 WL 1158123 at *5 n.8
(same). Therefore, Beazer's motion will be denied, but without
prejudice to refiling should plaintiff receive and choose to
pursue any funds in excess of the amount owed to the estate.

IV. CONCLUSION

Summary judgment will be entered in favor of Ferro on the grounds that Ferro has already been dismissed [Doc. No. 39]. Beazer's motion for summary judgment [Doc No. 35] will be denied. The Motion to Substitute Jeffrey Sikirica, chapter 7 trustee, for Phyllis Killmeyer, [Doc No. 67] will be granted. All motions to strike the motions filed by plaintiff or the chapter 7 trustee [Doc Nos. 48, 49, 59, 60, 64, 65, 66, 164, 170] will be denied, as the substitution of the trustee cures Beazer's remaining objections. Finally, plaintiff's Motion to Strike Portions of Defendant Ferro Engineering's Motion for Summary Judgment [Doc. No. 43] will be denied as moot.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PHYLLIS KILLMEYER, ET AL.
     Plaintiff,            )
                              )
    v.                       )     Civil Action No. 96-1723
                              )
OGLEBAY NORTON COMPANY, ET AL.,  )
     Defendants.           )

## ORDER

AND NOW, this 20th day of September, 2011, IT IS HEREBY
ORDERED that, the Motion for Summary Judgment filed by defendant
Oglebay Norton Company and its division Ferro Engineering [Doc.
No. 39], is GRANTED. Defendant Beazer East, Inc.'s Motion for
Summary Judgment [Doc. No. 35] is DENIED. The Motion to
Substitute Jeffrey Sikirica, chapter 7 trustee, for Phyllis
Killmeyer [Doc. No. 67] is GRANTED. All motions to strike filed
by the parties [Doc. Nos. 43, 48, 49, 59, 60, 64, 65, 66, 131,
164, and 170] are DENIED.

BY THE COURT,

s/ Gary L. Lancaster , C.J.
Hon. Gary L. Lancaster,
Chief United States District Judge

cc: All Counsel of Record